■ In the Matter of TINA H. BLACKBURN, Appellant, v WILLIAM B. SONTAG, Respondent. (And Another Proceeding.) — Appeals by Tina Blackburn (1) as limited by her brief, from so much of an order of the Family Court, Westchester County (Scancarelli, J.), entered November 13, 1981, as dismissed as moot her petition seeking modification of an order of protection of that court (Palella, J.), dated October 3, 1980, and thereupon vacated as moot two orders of that court dated March 11, 1981 (Buell, J.), and June 5, 1981 (Scancarelli, J.), which had, *inter alia,* directed a psychiatric examination of William Sontag; (2) as limited by her brief, from so much of an order of the same court, entered January 19, 1982 (Scancarelli, J.), as upon reargument of the order entered November 13, 1981, adhered to the original determination; and (3) from an order of the same court, entered May 13, 1982 (Scancarelli, J.), which, *inter alia,* after a hearing, found Tina Blackburn in contempt for her failure to comply with prior orders of that court concerning visitation of the child of the parties. Appeal from order entered November 13, 1981 dismissed as academic, without costs or disbursements. Said order was superseded by the order entered January 19, 1982, made upon reargument. Order entered January 19, 1982, affirmed, insofar as appealed from, without costs or disbursements. Order entered May 13, 1982, affirmed, without costs or disbursements. Tina Blackburn, the mother of the child of the parties, was in this State less than two months when she brought a petition in the Family Court, Westchester County, to deny the father visitation. Soon thereafter the father, William B. Sontag, applied for a change of custody in the courts of Ohio. His application was granted even though petitioner did not appear. On April 11, 1980 the Family Court denied, for lack of subject matter jurisdiction, the mother's petition seeking termination of the father's right of visitation. In addition, the court refused to enforce the most recent Ohio custody decree. On January 3, 1980 a temporary order of protection had been issued by the Family Court, Westchester County, which prohibited the father from removing the child from the court's jurisdiction. Six months later, on July 3, 1980, since no hearing had been held, the temporary order of protection was extended. On October 3, 1980 a dispositional order was issued, which provided that the father could not remove the child from the court's jurisdiction, except as provided by a decree of the Court of Common Pleas of the State of Ohio, dated December 24, 1979, and on the condition that the father post a $5,000 bond insuring the return of the child. That order of protection was to remain in effect for 12 months. On December 23, 1980 the mother sought to modify the order of protection, currently in effect, to the extent that visitation be suspended and/or terminated, pending a psychiatric examination of both the father and the child. On March 11, 1981 the court granted the mother's motion for an order directing that the father be examined by a court-appointed psychiatrist, and by order dated June 5, 1981 an examining psychiatrist was designated. On November 13, 1981 an order and decision was entered in the Family Court, Westchester County, which, *inter alia,* found the mother's request for a modification of the order of protection was moot since that order had expired on October 3, 1981. Accordingly, her petition for that relief was dismissed. The orders directing the father to submit to a psychiatric examination and appointing a psychiatrist were also vacated as moot. The court found that "[a]s far as this court is concerned, there exists an order of a sister state court, nothing more. Following this court's decision of April 11, 1980 * * * 'the case at bar should properly be heard in Ohio' ". The court thus declined to modify the sister State decree because it lacked subject matter jurisdiction. When the April 11, 1980 order was entered, the mother had only been in this State for some five months and the Family Court then determined correctly that it lacked jurisdiction over an application to modify the Ohio visitation and custody decree. By November 13,

1981, however, the mother and the child had lived in this State for approximately two years and by that time the child had significant contacts with this State. If the mother hereafter moves to modify the Ohio decree, it is possible that New York will now be considered the child's "'[h]ome state'" which is defined in subdivision 5 of section 75-c of the Domestic Relations Law as "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months". Our determination of these appeals is therefore without prejudice to an application by the mother for modification of the Ohio decree, upon a showing that the courts of this State have subject matter jurisdiction over questions concerning custody of the child of the parties. The order entered May 13, 1982, which, *inter alia,* found the mother in contempt for failure to comply with prior orders of the Family Court, entered December 15, 1981, is affirmed. Upon reviewing the testimony adduced at the hearing, we find that there was sufficient evidence of the mother's willful violations of the orders of the Family Court, entered December 15, 1981, enforcing the Ohio visitation decree. Lazer, J. P., Gibbons, Niehoff and Boyers, JJ., concur.