OPINION OF THE COURT
Denis R. Hurley, J.
INTRODUCTION
Respondent moves to vacate an order of this court granting *1019 custody of the children of the parties to the petitioner, upon the grounds of fraud, that her default in appearing was excusable, and that the court lacked subject matter jurisdiction. The application is made pursuant to CPLR 5015 (a) (1), (3) and (4).
Petitioner cross-moves, inter alia, for an order either denying the relief requested by the respondent, or scheduling the matter for a hearing on the jurisdictional issue.
For the reasons hereinafter stated, a hearing will be held to determine whether this court has subject matter jurisdiction.
FACTS
Prior to discussing the merits of the present motions, a brief review of the factual background will be made to place the legal arguments in context.
Both the petitioner and respondent were originally from the State of New York and have family members here. From the summer of 1981 to January 17, 1986, the parties resided together in St. Clemens, Michigan, without the benefit of marriage. During this period, two children were born from the relationship — Michael R. Pezner, date of birth June 26, 1985, and Christopher F. Pezner, date of birth May 17, 1984. In January 1986, petitioner returned to New York with the children.
On January 22, 1986, a Judge of this court signed an order to show cause in which the petitioner sought custody of Michael and Christopher. The matter was made returnable before me on March 12, 1986. The jurisdictional basis for the application was Domestic Relations Law § 75-d (1) (c) (ii). Petitioner’s supporting papers alleged, in substance, and with considerable particularity, that the respondent was an unfit parent and that the children would be in danger if placed in her care.
The respondent was personally served in Michigan with the order to show cause. She failed to appear on the return date and, in fact, had no communication with this court until several months thereafter when she made the present CPLR 5015 motion.
On the March 12, 1986 return date of the petitioner’s order to show cause for custody, an inquest was held, with a judgment being entered on May 6th, declaring him to be the father of the children, and awarding their custody to him. This is the order which the respondent now seeks to vacate.
*1020 APPLICABLE LAW
Initially, the threshold question of subject matter jurisdiction will be addressed. If the court was without power to render its decision in the first instance, all other issues raised by respondent become moot as will be discussed subsequently.
The Uniform Child Custody Jurisdiction Act of New York (UCCJA) (Domestic Relations Law art 5-A) provides in pertinent part as follows:
"§ 75-d. Jurisdiction to make child custody determinations
"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when * * *
"c. the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child”.
This court proceeded on March 12, 1986, under the above-quoted emergency provisions of UCCJA. The respondent claims that this assumption of jurisdiction was erroneous.
Were the "emergency provisions” of UCCJA properly invoked at the March 12, 1986 inquest? Do those provisions pertain to the court’s subject matter jurisdiction? If so, is the May 6, 1986 judgment awarding custody to the petitioner open to collateral attack under CPLR 5015 (a) (4)?
THE UCCJA PREREQUISITES SET FORTH IN DOMESTIC RELATIONS LAW § 75-D PERTAIN TO SUBJECT MATTER JURISDICTION
Subject matter jurisdiction involves a court’s competence or power to adjudicate a matter. (See, e.g., Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 [1967]; 1 Carmody-Wait 2d, Courts and Their Jurisdiction § 2:78; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 301.02.)
If a court proceeds without subject matter jurisdiction, any resulting order or judgment is a nullity. (1 Carmody-Wait 2d, op. cit. § 2:83.) Since the origins of the power or competence to act are proscribed by Constitution and statutes of the State, the parties may not confer subject matter jurisdiction where it does not otherwise exist either by their stipulation, waiver, inaction or, indeed, default. (21 CJS, Courts, § 116.)
The above propositions of law are relatively straightforward —simple to explain in the abstract. Unfortunately, the same *1021 may not always be said of their application in particular cases. (See, e.g., Freccia v Carullo, 93 AD2d 281, 286 [2d Dept 1983] ["within comparatively recent years, it has been recognized that the use of terms such as 'want of subject matter jurisdiction’, or 'lack of jurisdiction’ have been misapplied and have also engendered confusion, and that however deceptively attractive and convenient, such terms are both too simple and too expensive * * * In fact one legal scholar has gone so far as to declare: Saying that a court lacks "jurisdiction,” however, is essentially meaningless because the word has no single meaning’ ”]; Nuernberger v State of New York, 41 NY2d 111 [1976].)
Although the issue of subject matter jurisdiction is fraught with confusion, one of the better decisions in the view of many, including Justice Lazer of the Appellate Division, Second Department,[1] is Lacks v Lacks (41 NY2d 71 [1976]). In Lacks, the plaintiff obtained a divorce in New York on the ground of abandonment. Two years later, and long after the time to appeal had passed, the defendant moved to vacate the judgment, pursuant to CPLR 5015 (a) (4), upon the ground that the court was without subject matter jurisdiction to entertain the action. More specifically, she alleged that the plaintiff had not been a resident in New York State for a full year preceding the commencement of the divorce action as required by Domestic Relations Law § 230.
In rejecting the defendant’s argument, the Court of Appeals stated: "The requirements of section 230 * * * go only to the substance of the divorce cause of action, not to the competence of the court to adjudicate the cause. Hence, a divorce judgment granted in the absence of one of the specified connections with the State, even if erroneously determined as a matter of law or fact, is not subject to vacatur under CPLR 5015 (subd [a], par 4)” (Lacks v Lacks, 41 NY2d, at p 73).
Query: Is the Lacks rationale applicable to the present case? Should the factual predicates necessary for a court to act under Domestic Relations Law § 75-d be treated the same as those set forth in Domestic Relations Law § 230, i.e., as elements of a cause of action, rather than as a part of the court’s subject matter jurisdiction?
In my view, petitioner’s argument in this regard is unsound. Lacks is not controlling. Its holding rests on the absence of *1022 any indication in section 230 that its requirements were meant by the Legislature to limit the Supreme Court’s jurisdiction in matrimonial matters.
As noted by Judge Breitel, writing for the court: "Not even the catchall word 'jurisdiction’ appears in the statute, much less an explicit limitation on the court’s competence to entertain the action” (Lacks v Lacks, supra, p 75; see also, Freccia v Carullo, 93 AD2d, at pp 287-288).
The situation is otherwise with respect to section 75-d (1) which reads: "A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination [under UCCJA] by initial or modification decree only when” one of the jurisdictional predicates set forth in the remainder of the section are present. (Emphasis supplied.) Therefore, unlike section 230, section 75-d contains the word "jurisdiction” coupled with, to use Judge Breitel’s terminology "an explicit limitation on the court’s competence to entertain the action”.
There are other problems inherent in the position that the Lacks rationale should be employed. To begin with, some doubt exists as to the precedent value of the case in the Appellate Division, Second Department. See concurring opinion of Lazer, J., in the recent Second Department case of Elkaim v Elkaim (123 AD2d 371, 373 [Sept. 22, 1986] ["Phillips v Phillips (70 AD2d 30) * * * held a divorce action based on abandonment to be jurisdictionally defective if commenced before the abandonment existed for a year. While that holding binds my vote, Lacks v Lacks * * * has persuaded me that jurisdiction is not implicated by the durational requirement relative to abandonment * * * Nevertheless, Phillips v Phillips, postdates Lacks and * * * (accordingly) (s)tare decisis (based on Phillips) precludes me from voting to affirm"]).[2]
Moreover, there are a series of Appellate Division, Second Department, decisions which have indicated — although with *1023 out elaboration or discussion of Lacks — that the section 75-d prerequisites to court action pertain to subject matter jurisdiction. (See, e.g., Harrison v Harrison, 116 AD2d 553 [1986]; Boutros v Boutros, 106 AD2d 536 [1984]; Charpentier v Charpentier, 98 AD2d 740 [1983]; Matter of Blackburn v Sontag, 92 AD2d 918 [1983]; Gomez v Gomez, 86 AD2d 594 [1982], affd 56 NY2d 746 [1982]; Steinman v Steinman, 80 AD2d 892 [1981].) More importantly, there is also a Court of Appeals case to the same effect, to wit, Vanneck v Vanneck (49 NY2d 602, 609 [1980]).
In sum, this court concludes that its invocation of the emergency provisions of Domestic Relations Law § 75-d involves its subject matter jurisdiction. That conclusion is compelled by the unique language of the UCCJA statute, and the case law cited above.
A FINDING OF SUBJECT MATTER JURISDICTION, MADE PURSUANT TO DOMESTIC RELATIONS LAW § 75-d, IS SUBJECT TO COLLATERAL ATTACK UNDER CPLR 5015 (a) (4).
At the outset, a distinction should be drawn between a court’s general subject matter jurisdiction and its competence in a particular case to adjudicate a claim. Of course, the Family Court has the power to determine custody disputes, such power being part of its general subject matter jurisdiction. However, for a Family Court Judge to act under UCCJA, more is required. As discussed previously, one of the jurisdictional predicates set forth in subdivisions (a) through (d) of section 75-d (1) of the Domestic Relations Law must also be present.[3]
General subject matter jurisdiction is purely a question of law. Questions of specific UCCJA subject matter jurisdiction, however, involve reference to the statute, coupled with factual determinations. In the present case, I made the factual determination at inquest that an emergency existed, as that term is defined in the statute.
It is troubling that the respondent — who unjustifiably ignored the initial process in this case — may now surface to collaterally challenge the court’s factual determination as to its UCCJA subject matter jurisdiction. If that avenue is open *1024 to her several months after inquest, presumably the same collateral attack could be made, for instance, several years hence. Would not such a conclusion "undermine significantly the doctrine of res judicata, and * * * eliminate the certainty and finality in the law and in litigation which the doctrine is designed to protect” (Lacks v Lacks, supra, p 77).
No one would argue that a judgment rendered by a court without subject matter jurisdiction is a nullity. And certainly a judgment issued by a court without general subject matter jurisdiction should be subject to vacatur at any time, either directly or collaterally, for the defect is patent and one purely of law. However, why should a factual finding that one of the specific UCCJA predicates is present, reached after inquest by a court with general custody jurisdiction, be subject to collateral attack under CPLR 5015 (a) (4)? The stock answer, of course, is that "if the court was wrong, its determination is a nullity, and therefore forever open to collateral attack”. Whether the "stock answer” is the correct answer is, in my judgment, debatable.
There are a number of decisions which contain language tending to support the principle that a collateral attack should be limited to those instances in which a court acts without general subject matter jurisdiction. However, on closer analysis most of those decisions involve matters other than subject matter jurisdiction, such as lack of standing to sue (McClelland v Robinson, 94 Misc 2d 312 [Civ Ct, NY County 1978]), absence of a condition precedent to suit (1890 Realty Co. v Ford, 121 Misc 2d 834 [Civ Ct, Kings County 1983]), procedural irregularities (Thrasher v United States Liab. Ins. Co., 19 NY2d 159 [1967]), or to simply hold that a lack of subject matter jurisdiction does not render all related proceedings void (Nuernberger v State of New York, 41 NY2d 111, 116 [1976], supra).
Cases which actually involve subject matter jurisdiction, and in which courts have said that a specific subject matter jurisdictional finding is immune from collateral attack are few, and include: Matter of Rougeron (17 NY2d 264 [1966]; Bolton v Schriever (135 NY 65 [1892]) and O’Donoghue v Boies (159 NY 87 [1899]). The following excerpt from O’Donoghue is particularly on point: "Later on I shall attempt to show that the court had jurisdiction of the subject-matter in the partition action, whatever may have been the character of the provisions of the will; but, if it be assumed that the will presented a question of jurisdiction, then we have the same *1025 question up that there was in Bolton’s case. It was decided in that case that the surrogate was bound to inquire and decide whether the testator was an inhabitant of the county at the time of his death, and if that officer decided that he was, upon evidence legally tending to support his decision, the decision cannot, in the absence of fraud or collusion, be questioned collaterally” (159 NY, at pp 106-107).
While the rationale underlying Matter of Rougeron, Bolton and O’Donoghue (supra) is sound in my view, it is at odds with the considerably more recent and contrary holding reached in Gomez v Gomez (86 AD2d 594 [2d Dept 1982], affd 56 NY2d 746 [1982], supra), a case which, like the one at bar, involves both a UCCJA proceeding and a CPLR 5015 vacatur motion.
In Gomez, the noncustodial father retained his child at the conclusion of his summer visitation period in 1979, and started an action here, under UCCJA, to modify the custody provisions of the parties’ 1975 Florida divorce decree. The mother appeared in the New York action, and cross-moved, inter alia, for support arrears. She did not contest the court’s subject matter jurisdiction. While the custody/support action was pending, the mother left the State with the child. Immediately thereafter, the New York court granted temporary custody of the child to the father. Nine months later, the mother resurfaced in New York and moved to vacate the custody order issued in her absence, arguing a lack of UCCJA subject matter jurisdiction. She lost at Special Term. However, the Appellate Division accepted her argument, reversed the lower court, dismissed the father’s custody petition and vacated the temporary custody order.
The holding in Gomez is consistent with the language of CPLR 5015 which lists as one of the grounds for the vacatur of a judgment the "lack of jurisdiction to render the judgment”.
The Legislature did not provide that the absence of "personal jurisdiction or general subject matter jurisdiction” may be attacked via rule 5015. Instead, it said "lack of jurisdiction”, without limitation. Therefore, in cases such as those under UCCJA, which involve both general and specific subject matter jurisdictional questions, the absence of either is a fair target for a vacatur motion.
As the Trial Judge, I am constrained to follow Gomez (supra) notwithstanding my reservations as to the present status of the law. The respondent is entitled to have this *1026 court’s specific subject matter jurisdictional finding of March 1986 relitigated. Therefore, a hearing will be held on that issue. The point of inquiry will be March of 1986, because whatever may have transpired thereafter is irrelevant to the jurisdictional question. (Gomez v Gomez, supra, pp 595-596.)
Based on the uncontroverted evidence presented at the March 12, 1986 inquest, the petitioner established that an emergency existed within the purview of Domestic Relations Law § 75-d (1) (c) (ii), albeit barely. However, for the court to retain this case following the contested hearing — i.e., for the case to survive the CPLR 5015 (a) (4) motion — the evidence must demonstrate that as of the inquest date, the children would have suffered emotionally or physically if jurisdiction had not been assumed. (Domestic Relations Law § 75-d [1] [c]
[ii].)
CONCLUSION
The UCCJA prerequisites, set forth in Domestic Relations Law § 75-d (1) (a) through (d), pertain to the court’s subject matter jurisdiction, rathér than being merely elements of a cause of action. A claimed erroneous determination is subject to collateral attack under CPLR 5015 (a) (4). Accordingly, a hearing will be held on December 19, 1986 before the undersigned to determine whether the subject matter jurisdiction of this court was properly invoked in March of 1986.
A decision on the other items of relief requested by each of the parties shall be held in abeyance pending the outcome of the hearing, which may render those other requests moot.

. See concurring opinion of Lazer, J., in Elkaim v Elkaim (123 AD2d 371, 373 [Sept. 22, 1986]).

. Parenthetically, if the residency requirement of Domestic Relations Law § 230 is simply an element of a cause of action, there would be nothing to prevent litigants from satisfying that element by stipulation, reserving for the trier of fact the disputed portions of the divorce action. Such a result, although consistent with the Lacks v Lacks (41 NY2d 71) holding, would be inconsistent with the legislative intent underlying the residency requirement, viz., to prevent New York from becoming a "divorce mill” for nonresidents, which intent is mentioned by Judge Breitel in the decision. The contrary holding reached in Phillips v Phillips (70 AD2d 30 [2d Dept 1979]) avoids that incongruity.

. Even if the general and specific subject matter jurisdiction requirements are satisfied, the court often must decide whether it should exercise its jurisdiction or defer to a court of another State. (See, e.g., Vanneck v Vanneck, 49 NY2d 602, 609 [1980].)