JOHN AVILDSEN, Respondent, v MYROSLAWA PRYSTAY, Appellant.

First Department, September 19, 1991

**14**

APPEARANCES OF COUNSEL

*Ann Detiere* for appellant.

*Harvey I. Sladkus* of counsel *(Feiden, Dweck & Sladkus,* attorneys), for respondent.

OPINION OF THE COURT

WALLACH, J.

We affirm the order appealed from essentially for the reasons stated by Justice Fingerhood. However the issue addressed by the dissent—the alleged unconscionability of the bargain (not discussed by the motion court and upon which the dissenters would reverse and remand for a further hearing)—requires a response.

The judicial power to annul a contractual obligation because of its unconscionability was known at common law *(see, Matter of Friedman,* 64 AD2d 70, 84) and it has found statutory expression in the Uniform Commercial Code (UCC 2-302). A pivotal finding which could trigger the exercise of such judicial nullification, whether under Code or common law, was where an egregiously oppressive contractual provision was perceived to emanate from a gross inequality in bargaining power between the contracting parties *(e.g., Fischer v General Elec. Hotpoint,* 108 Misc 2d 683; *Leonedas Realty Corp. v Brodowsky,* 115 Misc 2d 88; *Jones v Star Credit Corp.,* 59 Misc 2d 189), resulting in a contract "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other" *(Earl of Chesterfield v Janssen,* 2 Ves Sen 125, 155, 28 Eng Rep [Reprint] 82, 100).

The difficulty with invocation of the doctrine here to reopen this contract, made on May 26, 1983 between the father and mother of a child born out of wedlock on November 5, 1981 for support of that child, is that the presumptive inequality of two such contracting parties has been considered and preempted by the Legislature in enacting section 516 of the Family Court Act. In recognition of a well-founded perception that a man and a woman enmeshed in a relationship of that kind are almost never in combat on a level playing field, the statute has crafted some fairly elaborate machinery to restore the balance. The section requires prior notice of the proposed support contract to specified public authorities, and the imprimatur of the court constituted by law as an omnipotent umpire to prevent overreaching after an open court hearing

and such fact finding as the court may deem appropriate. The arrangement, made by two parties each represented by independent counsel, thus partakes of all the solemnity of a stipulation made in open court, with additional built-in safeguards. While any Judge is free to believe that a better piece of machinery could or should be devised, any judicial intervention of that sort is foreclosed by the supervening legislative solution.

Some of the unconscionability cases emphasize that the fairness *vel non* of the bargain under scrutiny must be appraised from the point of view of the parties at the time the bargain was made *(e.g., Matter of Young,* 81 Misc 2d 920). Prior to the date when this agreement became conditionally effective, by the mother's signature, both plaintiff father and defendant mother were negotiating in the shadow of uncertainty as to the actual paternity of the child. Not only the parties but the State itself had a vital interest in resolving this uncertainty, and that primal State interest was held in 1979 to be the basic rationale supporting the constitutionality of Family Court Act § 516 in *Bacon v Bacon* (46 NY2d 477), a mere four years before the resolution of this controversy under the same statute. In *Bacon* the Court of Appeals rejected a constitutional attack on the statute based on lack of equal protection, leveled at the allegedly suspect distinction drawn in the legislation between legitimate and illegitimate children.

As a facial matter, it is not surprising that the Supreme Court Justice reviewing the bargain found the consideration tendered by the father adequate. He was to pay a lump sum of $55,000, plus the mother's counsel fees of $8,000. He bound himself to pay monthly installments of $1,037.92 over the next 60 months, or a total in excess of $125,000. The fact that on June 9, 1983, only two weeks later, based on the most advanced serological scientific test available, an expert rendered a report fixing the likelihood of paternity at 99%, should not alter the finality or stability of the arrangement. If that had been crucial, the parties would have been free to defer finality until the test results were known; but, for whatever reason, they chose not to adopt this course. The outcome of the postagreement test procedure, clearly within the contemplation of the parties at the time the agreement was made, was not reserved by either as a future escape hatch for its alteration, nor was any such suggestion made before the Supreme Court Justice at the hearing held by her less than one month

later on July 5, 1983. Therefore, in our view, no tribunal of the State is now competent, eight years later, to revise the settlement.

Such a conclusion is only strengthened by the subsequent conduct of the parties. Starting in 1984, based on the father's contention that the mother had breached the nonmolestation provisions of the agreement, he withheld direct payment of the accruing installments from her by depositing them in escrow. Thereupon the mother enforced the father's full compliance by the most powerful enforcement tool in the civil armory, a contempt proceeding against the father. She also sued for and recovered the interest accumulated on the arrears. Thus, in the most decisive way possible, she ratified the agreement.

Research has disclosed no case where a party has gone to law to extract every benefit obtainable under a contract, and has thereafter been permitted to repudiate the reciprocal obligations then regarded, with the benefit of hindsight, as too onerous. Apart from the manifest inequities, the bar to such conduct arises from the nature of the doctrine of unconscionability itself. As was observed in *Super Glue Corp. v Avis Rent A Car Sys.* (132 AD2d 604, 606), "The doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery. Under both the UCC and common law, a court is empowered to do no more than refuse enforcement of the unconscionable contract or clause".

Accordingly, the order of Supreme Court, New York County (Shirley Fingerhood, J.), entered March 22, 1990, which denied and dismissed defendant's application to vacate the court-approved agreement between the parties dated March 18, 1983, and for related relief, is affirmed without costs.

SMITH, J. (dissenting). Because I believe that the compromise agreement entered into by these unmarried parties pursuant to Family Court Act § 516 fails to make adequate provision for the support of their child and is, therefore, unconscionable, I would reverse and, accordingly, dissent. The matter should be remanded for a determination of a proper amount of support. Only if it becomes necessary should financial disclosure by the plaintiff father be required.

On November 5, 1981, the defendant, Myroslawa Prystay, gave birth to a son. Throughout her pregnancy and since his birth, defendant has maintained that plaintiff, John Avildsen, a successful film director, was the father. The defendant

commenced a paternity action in Family Court, New York County, against the plaintiff prior to the child's birth, but it was dismissed without prejudice due to improper service. Subsequent thereto, but also prior to the child's birth, the plaintiff commenced an action in the Supreme Court, New York County, seeking, *inter alia*, a declaratory judgment that he was not the father of the unborn child.

Plaintiff's declaratory action and Prystay's allegation of paternity were resolved by a compromise agreement dated March 18, 1983, executed by Avildsen on that date and executed by Prystay on May 26, 1983. In the compromise agreement Avildsen, *inter alia*, acknowledged paternity pending the results of blood grouping and HLA (Human Leucocyte Antigen) tests and agreed to provide for the support, maintenance and education of the child to the extent of payment of $55,000 at the time of entry of the order or judgment approving the agreement and the sum of $1,037.92 each month for a period of 60 months commencing one month after entry of the said judgment or order. However, the agreement specifically provided that "in the event the results of the HLA Test and/or other tests reveal that John is not the father of the Child and/or that substantial medical doubt exists as to John's paternity, then this Agreement shall be cancelled and deemed by the parties to be null and void and of no legal effect whatever. The parties expressly agree that they are relying solely on the results of the aforesaid tests as a condition precedent to the viability and enforceability of this Agreement."

Several other provisions of the compromise agreement require mention. Pursuant to a nonmolestation, nondisclosure clause, Avildsen would be entitled to recoup all sums paid under the compromise agreement in the event Prystay breached that clause. No relief or recourse was provided for Prystay in the event of a breach thereof by Avildsen. A general release clause provided that except as otherwise provided in the compromise agreement, the parties "release[d] and forever discharge[d] each other from any and all actions, suits, debts, claims, demands and obligations whatever, both in law and equity, which either of them ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause or thing to the date of the execution of this Agreement." The compromise agreement was also (1) to be governed by New York law, (2) severable, (3) merged with respect to the understanding of the parties, (4) binding and

conclusive as to the parties and their heirs, next of kin, assignors, executors and administrators, (5) subject to modification or waiver only if "in writing and executed with the same formality as this Agreement", (6) to be subject to court approval, without a reservation by the court of the right to modify, and (7) to be incorporated by reference into the judgment or order approving same but not merged into that judgment or order.

By report dated June 9, 1983, Leon N. Sussman, M.D., advised that the blood grouping and HLA tests found a 99.96% plausibility of paternity by Avildsen. This figure, according to Hummel's Verbal Predicates for Different Likelihoods of Paternity, deemed paternity "practically proved".[1]

The parties appeared before Justice Hortense W. Gabel on July 5, 1983 and requested approval of the compromise agreement. The court was advised and satisfied that the Corporation Counsel of the City of New York and the Department of Social Services had consented to the entry of a judgment or order approving the agreement. The court, despite some initial equivocation by Prystay, was also satisfied that the parties had freely and voluntarily entered into the compromise agreement. Accordingly, by judgment dated July 5, 1983, the compromise agreement was approved by Justice Gabel pursuant to Family Court Act § 516 (a).

Avildsen made the initial lump-sum payment and then the monthly payments until September 1984. At that time Avildsen placed the payments in escrow, alleging that Prystay had violated the nonmolestation clause by threatening and bothering him.

Avildsen then commenced the instant action to recoup all of the moneys paid under the agreement because of the defendant's alleged breach. Prystay's answer included 16 affirmative defenses, the last three of these also being denominated counterclaims. The affirmative defenses included, *inter alia,* that the defendant executed the compromise agreement under duress, that the compromise agreement, particularly the nonmolestation clause, was unconscionable, that the defendant's actions were justified to obtain the required payments and that the plaintiff had breached the agreement. The affirmative defenses/counterclaims alleged, *inter alia,* causes of action that may be characterized as for malicious prosecution, inten-

---

1. *Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 [No. 3] Fam LQ 262.

tional infliction of emotional distress and rescission of the agreement based upon the plaintiff's alleged breach. Prystay contended therein that an upward modification of the support was required on the grounds that Justice Gabel failed to determine the adequacy of the support.

By order dated May 6, 1985, Justice Alfred Ascione granted defendant's motion for the arrears that had accrued since September 1984. Avildsen failed to comply with that order until the defendant moved to hold him in contempt. Plaintiff then complied and the contempt motion was withdrawn. Plaintiff then moved to reargue and the defendant sought payment of the interest that had accrued on the arrears. By order entered October 22, 1985, Justice Ascione denied reargument and directed Avildsen to pay Prystay the accumulated interest.

Plaintiff subsequently sought dismissal of the affirmative defenses and counterclaims set forth in Prystay's answer. By decision dated April 2, 1987 and order entered on October 5, 1987, Justice Ascione granted the plaintiff's motion only with respect to the tenth affirmative defense which asserted a failure to appoint a guardian ad litem for the infant child. Plaintiff appealed that order to the extent that his motion was denied and this court unanimously affirmed, without opinion, by order entered on June 27, 1989.[2]

By way of an order to show cause, defendant requested that the court: (1) grant interim child support of $10,000 per month pursuant to section 236 (B) (7) and section 240 of the Domestic Relations Law; (2) invalidate the compromise agreement as unconscionable; (3) award the defendant a retroactive lump-sum payment of $150,000 pursuant to Domestic Relations Law § 236 (B) (7) and § 240 (1-b) (k); (4) compel full financial disclosure of plaintiff's income and assets pursuant to Domestic Relations Law § 236 (B) (4) and § 240 (1-b) (j); (5) grant defendant leave to amend her answer to include additional counterclaims for abuse of process, prima facie tort and intentional infliction of emotional distress; (6) award defendant attorneys' fees; and (7) impose sanctions on plaintiff's counsel for participating in (allegedly) frivolous litigation.

By order entered on March 22, 1990, the Supreme Court denied defendant's motion in its entirety. The IAS court concluded that in light of Justice Gabel's approval of the agreement as required by Family Court Act § 516 and the

---

2. That appeal was captioned *Anonymous v Anonymous* (151 AD2d 1056).

binding and conclusive nature of an agreement pursuant to that section, the agreement would not be set aside. Because the compromise agreement was not disturbed, the application for plaintiff's financial disclosure and attorneys' fees was denied as moot. Defendant was not granted leave to amend her answer because she had delayed for almost six years and the court felt that there needed to be an end to this litigation. This appeal followed.

On appeal defendant essentially argues as she did before the IAS court. First, the compromise agreement is null and void under Family Court Act § 516 because it fails to make adequate provision for the child's support, it was not approved by the appropriate government officials because she resided in Suffolk and not New York County at the time the agreement was approved,[3] and plaintiff did not complete performance of the compromise agreement in that he withheld payments that had to be compelled by court order. Second, the compromise agreement is unenforceable by the plaintiff because of his breach, there was no consideration and the defendant executed the agreement under duress. Third, the IAS court improperly construed Family Court Act § 516 such that a discriminatory and unconstitutional distinction is made between marital and nonmarital children. Fourth, full financial disclosure of plaintiff's income and assets is required in child support cases. (Defendant contends that plaintiff has earned millions of dollars from several successful film projects.) Fifth, interim support and a retroactive lump-sum payment are required in light of the void compromise agreement and plaintiff's (allegedly) publicly known wealth. Sixth, amendment of the answer is proper on the grounds that, *inter alia,* no new facts were pleaded, there was no prejudice to the plaintiff and the elements for causes of action for abuse of process, intentional infliction of emotional distress and prima facie tort were contained in the first and second counterclaims (upheld by Justice Ascione) but not so denominated. Seventh, attorneys' fees and sanctions should be granted because the plaintiff has used his wealth to institute litigation to harass the defendant, who is of considerably lesser means.

Plaintiff argues that the compromise agreement is valid and enforceable and that he has completely performed by making

---

3. It appears that defendant's contention that the agreement is void because it was not approved by Suffolk County Authorities *(see,* Family Ct Act § 516 [b]) was waived because there was no objection at the time.

all of the payments required thereunder. (Defendant does not allege that any payments are outstanding under the agreement.) Plaintiff contends that Family Court Act § 516 is neither discriminatory nor unconstitutional. Where paternity is in dispute, such agreements avoid difficult and expensive litigation and encourage acknowledgment of paternity and responsibility. Moreover, plaintiff relies upon *Bacon v Bacon* (46 NY2d 477 [1979]) which upheld the constitutionality of Family Court Act § 516 and denied modification of an agreement pursuant to that statute. Plaintiff further contends that the request for financial disclosure and interim support are premature because the compromise agreement has not been set aside and the demand for a retroactive payment is not provided for by New York law. With respect to the claim for attorneys' fees and sanctions, plaintiff alleges that the claim for fees is neither properly documented nor required and there is no basis for sanctions. Finally, the arguments which failed to persuade Justice Ascione and this court to dismiss the affirmative defenses and counterclaims in the answer (except for the tenth affirmative defense)—general release, laches, Statute of Limitations, and failure to state a cause of action[4]—are again alleged.

The agreement as made by the parties and approved by the Supreme Court did not provide for support for the child during those years when he is most in need of support. To hold that such an agreement, even if arguably ratified by the mother, is binding on the child is to abdicate this court's role as a protector of the best interests of a child unable to protect itself. Indeed, this is the role of the court embodied in Family Court Act § 516 (a) which requires that such agreement be approved by the court.

Pursuant to the legislative mandate contained in Family Court Act § 516 (a), it was the responsibility of the approving court to pass upon the basic fairness of the agreement to the child, including whether or not it was unconscionable. The legal theory of unconscionability was used to analyze a contract concerning the care and custody of an infant in *Matter of Baby "M"* (217 NJ Super 313, 525 A2d 1128, 1160 [1987], *mod* 109 NJ 396, 537 A2d 1227 [1988]). In that case the natural father and his wife sought enforcement of a surrogate

---

4. These grounds alleged by plaintiff are based upon the fact that defendant's defenses and counterclaims, for the greater part, concern events occurring prior to the execution of the compromise agreement in 1983.

parenting contract whereby, *inter alia,* the parental rights of the natural mother would be terminated to permit adoption of the child by the wife. The New Jersey trial court rejected the claim that the surrogate parenting contract was unconscionable because there was no showing of "unfairness, overreaching, bargaining disparity or patent unfairness that no reasonable person acting without duress would accept the contract terms." *(Matter of Baby "M", supra,* 217 NJ Super, at 377-378, 525 A2d, at 1160.) The Supreme Court of New Jersey, without addressing the question of unconscionability, held that the surrogate parenting contract was illegal and in conflict with State public policy. (537 A2d 1227, 1246-1250, *supra.)* However, in articulating the public policy consideration for voiding the surrogate parenting contract, the Supreme Court of New Jersey, *inter alia,* essentially noted the inherent unfairness of such an agreement in that "it totally ignores the child * * * through the use of money." *(Matter of Baby "M", supra,* 109 NJ, at 442, 537 A2d, at 1250.)

In the case at bar the interests of the child were ignored in that the agreement provided only limited support and terminated his rights vis-à-vis his father in exchange for money. The unfairness and unconscionability of such an agreement with respect to the child are eminently clear and contrary to the rule that parents are liable for the support and maintenance of their children through their infancy. Consequently, it was error and an abuse of discretion for the court to approve the agreement between these parties.

Contrary to the position of the plaintiff, *Bacon v Bacon* (61 AD2d 969 [1978], *affd* 46 NY2d 477 [1979], *supra)* does not provide support for upholding the compromise agreement in the face of inadequate support. *Bacon* is distinguishable from the case at bar because it appears that the agreement at issue therein provided complete support during infancy. In *Bacon* the infant, by her mother, sought upward modification of an agreement for the child's support entered into and approved pursuant to Family Court Act § 516 (c). The increase in support was to provide, *inter alia,* a fund for private schooling and college in excess of the amounts provided for in the agreement. *(Supra,* 61 AD2d at 969.) The Appellate Division, First Department, ruled that the agreement, as approved, was valid and binding upon the mother and child and that complete performance under the agreement barred the mother or child from other available remedies for the support or education of the child. *(Supra.)* It appears that this court intended

that support be provided through infancy when it stated: "This [adherence to the agreement], in turn, protects the societal interest by ensuring necessary support, thereby preventing the child from becoming a public charge. On balance, the statutory provision is constitutional and has a rational basis to encourage and ensure necessary support and maintenance of illegitimate children during infancy." *(Supra,* 61 AD2d, at 969-970.) In affirming, the Court of Appeals appears to confirm the requirement of support of nonmarital children through infancy in that it concluded that "[m]ore important, the challenged statute helps to ensure that the child will not be without support from his father." (46 NY2d 477, 480, *supra.)*

It is thus reasonable to conclude that the foundation for *Bacon (supra)* and for Family Court Act § 516 was an agreement providing support through infancy rather than for a mere five years of the life of a child.

Finally, although defendant has raised the argument that Family Court Act § 516 is unconstitutional, notice was not given to the Attorney-General as required and this argument will not be addressed. (Executive Law § 71.) Nevertheless, the enforcement of the agreement in the face of the facts here presented also raises serious constitutional questions of equal protection and due process.

ASCH and KASSAL, JJ., concur with WALLACH, J.; ROSENBERGER, J. P., and SMITH, J., dissent in an opinion by SMITH, J.

Order, Supreme Court, New York County, entered on March 22, 1990, affirmed, without costs.

Application by defendant-appellant to direct that plaintiff-respondent pay counsel fees (in the event the appellant prevails on appeal) is denied.