[676 NYS2d 569]

Tony Brower et al., Appellants, et al., Plaintiffs, v Gateway 2000, Inc., et al., Respondents.

First Department, August 13, 1998

APPEARANCES OF COUNSEL

*Thomas A. Holman* of counsel, New York City (*Zachary Alan Starr* on the brief; *Starr & Holman, L. L. P.,* attorneys), for appellants.

*Robert M. Rader* of counsel, New York City (*Daniel R. Murdock* and *Alan B. Howard* on the brief; *Winston & Strawn,* attorneys), for respondents.

**OPINION OF THE COURT**

MILONAS, J. P.

Appellants are among the many consumers who purchased computers and software products from defendant Gateway 2000 through a direct-sales system, by mail or telephone order. As of July 3, 1995, it was Gateway's practice to include with the materials shipped to the purchaser along with the merchandise a copy of its "STANDARD TERMS AND CONDITIONS AGREEMENT" and any relevant warranties for the products in the shipment. The Agreement begins with a "Note to the Customer," which provides, in slightly larger print than the remainder of the document, in a box that spans the width of the page: "This document contains Gateway 2000's Standard Terms and Conditions. By keeping your Gateway 2000 computer system beyond thirty (30) days after the date of delivery, you accept these Terms and Conditions." The document consists of 16 paragraphs, and, as is relevant to this appeal, paragraph 10 of the agreement, entitled "DISPUTE RESOLUTION," reads as follows: "Any dispute or controversy arising out of or relating to this Agreement or its interpretation shall be settled exclusively and finally by arbitration. The arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The arbitration shall be conducted in Chicago, Illinois, U.S.A. before a sole arbitrator. Any award rendered in any such arbitration proceeding shall be final and binding on each of the parties, and judgment may be entered thereon in a court of competent jurisdiction."

Plaintiffs commenced this action on behalf of themselves and others similarly situated for compensatory and punitive damages, alleging deceptive sales practices in seven causes of action, including breach of warranty, breach of contract, fraud

and unfair trade practices. In particular, the allegations focused on Gateway's representations and advertising that promised "service when you need it," including around-the-clock free technical support, free software technical support and certain on-site services. According to plaintiffs, not only were they unable to avail themselves of this offer because it was virtually impossible to get through to a technician, but also Gateway continued to advertise this claim notwithstanding numerous complaints and reports about the problem.

Insofar as is relevant to appellants, who purchased their computers after July 3, 1995, Gateway moved to dismiss the complaint based on the arbitration clause in the Agreement. Appellants argued that the arbitration clause is invalid under UCC 2-207, unconscionable under UCC 2-302 and an unenforceable contract of adhesion. Specifically, they claimed that the provision was obscure; that a customer could not reasonably be expected to appreciate or investigate its meaning and effect; that the International Chamber of Commerce (ICC) was not a forum commonly used for consumer matters; and that because ICC headquarters were in France, it was particularly difficult to locate the organization and its rules. To illustrate just how inaccessible the forum was, appellants advised the court that the ICC was not registered with the Secretary of State, that efforts to locate and contact the ICC had been unsuccessful and that apparently the only way to attempt to contact the ICC was through the United States Council for International Business, with which the ICC maintained some sort of relationship.

In support of their arguments, appellants submitted a copy of the ICC's Rules of Conciliation and Arbitration and contended that the cost of ICC arbitration was prohibitive, particularly given the amount of the typical consumer claim involved. For example, a claim of less than $50,000 required advance fees of $4,000 (more than the cost of most Gateway products), of which the $2000 registration fee was nonrefundable even if the consumer prevailed at the arbitration. Consumers would also incur travel expenses disproportionate to the damages sought, which appellants' counsel estimated would not exceed $1,000 per customer in this action, as well as bear the cost of Gateway's legal fees if the consumer did not prevail at the arbitration; in this respect, the ICC Rules follow the "loser pays" rule used in England. Also, although Chicago was designated as the site of the actual arbitration, all correspondence must be sent to ICC headquarters in France.

The IAS Court dismissed the complaint as to appellants based on the arbitration clause in the Agreements delivered with their computers. We agree with the court's decision and reasoning in all respects but for the issue of the unconscionability of the designation of the ICC as the arbitration body.

■ First, the court properly rejected appellants' argument that the arbitration clause was invalid under UCC 2-207. Appellants claim that when they placed their order they did not bargain for, much less accept, arbitration of any dispute, and therefore the arbitration clause in the agreement that accompanied the merchandise shipment was a "material alteration" of a pre-existing oral agreement. Under UCC 2-207 (2), such a material alteration constitutes "proposals for addition to the contract" that become part of the contract only upon appellants' express acceptance. However, as the court correctly concluded, the clause was not a "material alteration" of an oral agreement, but, rather, simply one provision of the sole contract that existed between the parties. That contract, the court explained, was formed and acceptance was manifested not when the order was placed but only with the retention of the merchandise beyond the 30 days specified in the Agreement enclosed in the shipment of merchandise. Accordingly, the contract was outside the scope of UCC 2-207.

In reaching its conclusion, the IAS Court took note of the litigation in Federal courts on this very issue, and, indeed, on this very arbitration clause. In *Hill v Gateway 2000* (105 F3d 1147, *cert denied* — US —, 118 S Ct 47), plaintiffs in a class action contested the identical Gateway contract in dispute before us, including the enforceability of the arbitration clause. As that court framed the issue, the "[t]erms inside Gateway's box stand or fall together. If they constitute the parties' contract because the Hills had an opportunity to return the computer after reading them, then all must be enforced" (*supra,* at 1148). The court then concluded that the contract was not formed with the placement of a telephone order or with the delivery of the goods. Instead, an enforceable contract was formed only with the consumer's decision to retain the merchandise beyond the 30-day period specified in the agreement. Thus, the agreement as a whole, including the arbitration clause, was enforceable.

This conclusion was in keeping with the same court's decision in *ProCD, Inc. v Zeidenberg* (86 F3d 1447), where it found that detailed terms enclosed within the packaging of particular computer software purchased in a retail outlet constituted the

contract between the vendor and the consumer who retained the product. In that case, the Seventh Circuit held that UCC 2-207 did not apply and indeed was "irrelevant" to such transactions, noting that the section is generally invoked where multiple agreements have been exchanged between the parties in a classic "battle of the forms," whereas *ProCD* (as well as *Hill* and this case) involves but a single form (*supra,* at 1452).

The *Hill* decision, in its examination of the formation of the contract, takes note of the realities of conducting business in today's world. Transactions involving "cash now, terms later" have become commonplace, enabling the consumer to make purchases of sophisticated merchandise such as computers over the phone or by mail—and even by computer. Indeed, the concept of "[p]ayment preceding the revelation of full terms" is particularly common in certain industries, such as air transportation and insurance (*supra,* at 1149; *ProCD, Inc. v Zeidenberg, supra,* at 1451).

While *Hill* and *ProCD*, as the IAS Court recognized, are not controlling (although they are decisions of the United States Court of Appeals for the circuit encompassing the forum State designated for arbitration), we agree with their rationale that, in such transactions, there is no agreement or contract upon the placement of the order or even upon the receipt of the goods. By the terms of the Agreement at issue, it is only after the consumer has affirmatively retained the merchandise for more than 30 days—within which the consumer has presumably examined and even used the product(s) and read the agreement—that the contract has been effectuated. In this respect, the case is distinguishable from *S&T Sportswear Corp. v Drake Fabrics* (190 AD2d 598), cited by appellants, where this Court found that an arbitration clause found on the reverse side of defendant's draft sales contract did constitute a "material alteration" where the parties did in fact have a pre-existing oral agreement.

While appellants argue that *Hill (supra)* is contrary to the law of New York in that it departs from the holding of cases such as *Matter of Marlene Indus. Corp. (Carnac Textiles)* (45 NY2d 327) and its progeny, we disagree with their interpretation of both cases: *Hill* not only involves one form only, as distinguished from the "battle of the forms" scenario of the cases appellants cite, but these cases are simply inapplicable because, as explained, no contract was formed here or in *Hill* until the merchandise was retained beyond the 30-day period. The disputed arbitration clause is simply one provision of the sole contract "proposed" between the parties.

■ Second, with respect to appellants' claim that the arbitration clause is unenforceable as a contract of adhesion, in that it involved no choice or negotiation on the part of the consumer but was a "take it or leave it" proposition (*see, e.g., Matter of State of New York v Ford Motor Co.,* 74 NY2d 495, 503), we find that this argument, too, was properly rejected by the IAS Court. Although the parties clearly do not possess equal bargaining power, this factor alone does not invalidate the contract as one of adhesion. As the IAS Court observed, with the ability to make the purchase elsewhere and the express option to return the goods, the consumer is not in a "take it or leave it" position at all; if any term of the agreement is unacceptable to the consumer, he or she can easily buy a competitor's product instead—either from a retailer or directly from the manufacturer—and reject Gateway's agreement by returning the merchandise (*see, e.g., Carnival Cruise Lines v Shute,* 499 US 585, 593-594; *Matter of Fidelity & Deposit Co. v Altman,* 209 AD2d 195). The consumer has 30 days to make that decision. Within that time, the consumer can inspect the goods and examine and seek clarification of the terms of the agreement; until those 30 days have elapsed, the consumer has the unqualified right to return the merchandise, because the goods or terms are unsatisfactory or for no reason at all.

While returning the goods to avoid the formation of the contract entails affirmative action on the part of the consumer, and even some expense, this may be seen as a trade-off for the convenience and savings for which the consumer presumably opted when he or she chose to make a purchase of such consequence by phone or mail as an alternative to on-site retail shopping. That a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract any more than such claim would undo a contract formed under other circumstances (*see, e.g., Morris v Snappy Car Rental,* 84 NY2d 21, 30). We further note that appellants' claim of adhesion is identical to that made and rejected in *Filias v Gateway 2000,* an unreported case brought to our attention by both parties that interprets the same Gateway agreement (No. 97C 2523 [ND Ill, Jan. 15, 1998, *transferred by* 1997 US Dist LEXIS 7115 [ED Mich, Apr. 8, 1997, Zatkoff, J.]).

■ Finally, we turn to appellants' argument that the IAS Court should have declared the contract unenforceable, pursuant to UCC 2-302, on the ground that the arbitration clause is unconscionable due to the unduly burdensome procedure and

cost for the individual consumer. The IAS Court found that while a class action lawsuit, such as the one herein, may be a less costly alternative to the arbitration (which is generally less costly than litigation), that does not alter the binding effect of the valid arbitration clause contained in the agreement (*see, Harris v Shearson Hayden Stone*, 82 AD2d 87, 92-93, *affd* 56 NY2d 627 *for reasons stated below*; *see also, Matter of Ball [SFX Broadcasting]*, 236 AD2d 158, *appeal dismissed* 91 NY2d 921).

As a general matter, under New York law, unconscionability requires a showing that a contract is "both procedurally and substantively unconscionable when made" (*Gillman v Chase Manhattan Bank*, 73 NY2d 1, 10). That is, there must be "some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party' [citation omitted]" (*Matter of State of New York v Avco Fin. Servs.*, 50 NY2d 383, 389). The *Avco* Court took pains to note, however, that the purpose of this doctrine is not to redress the inequality between the parties but simply to ensure that the more powerful party cannot " 'surprise' " the other party with some overly oppressive term (*supra*, at 389).

As to the procedural element, a court will look to the contract formation process to determine if in fact one party lacked any meaningful choice in entering into the contract, taking into consideration such factors as the setting of the transaction, the experience and education of the party claiming unconscionability, whether the contract contained "fine print," whether the seller used "high-pressured tactics" and any disparity in the parties' bargaining power (*Gillman v Chase Manhattan Bank*, *supra*, at 11). None of these factors supports appellants' claim here. Any purchaser has 30 days within which to thoroughly examine the contents of their shipment, including the terms of the Agreement, and seek clarification of any term therein (*e.g., Matter of Ball [SFX Broadcasting]*, *supra*, at 161). The Agreement itself, which is entitled in large print "STANDARD TERMS AND CONDITIONS AGREEMENT," consists of only four pages and 16 paragraphs, all of which appear in the same size print. Moreover, despite appellants' claims to the contrary, the arbitration clause is in no way "hidden" or "tucked away" within a complex document of inordinate length, nor is the option of returning the merchandise, to avoid the contract, somehow a "precarious" one. We also reject appellants' insinuation that, by using the word "standard," Gateway deliberately

meant to convey to the consumer that the terms were standard within the industry, when the document clearly purports to be no more than *Gateway's* "standard terms and conditions."

With respect to the substantive element, which entails an examination of the substance of the Agreement in order to determine whether the terms unreasonably favor one party (*Gillman v Chase Manhattan Bank, supra*, 73 NY2d, at 12), we do not find that the possible inconvenience of the chosen site (Chicago) alone rises to the level of unconscionability. We do find, however, that the excessive cost factor that is necessarily entailed in arbitrating before the ICC is unreasonable and surely serves to deter the individual consumer from invoking the process (*see, Matter of Teleserve Sys. [MCI Telecommunications Corp.]*, 230 AD2d 585, 594, *lv denied* App Div, 1st Dept, Sept. 30, 1997, 1997 NY App Div LEXIS 10626). Barred from resorting to the courts by the arbitration clause in the first instance, the designation of a financially prohibitive forum effectively bars consumers from this forum as well; consumers are thus left with no forum at all in which to resolve a dispute. In this regard, we note that this particular claim is not mentioned in the *Hill* decision, which upheld the clause as part of an enforceable contract.

While it is true that, under New York law, unconscionability is generally predicated on the presence of both the procedural and substantive elements, the substantive element alone may be sufficient to render the terms of the provision at issue unenforceable (*see, Gillman v Chase Manhattan Bank, supra*, at 12; *Matter of State of New York v Avco Fin. Servs., supra*, at 389; *State of New York v Wolowitz*, 96 AD2d 47, 68). Excessive fees, such as those incurred under the ICC procedure, have been grounds for finding an arbitration provision unenforceable or commercially unreasonable (*see, e.g., Matter of Teleserve Sys. [MCI Telecommunications Corp.], supra*, at 593-594).

In the *Filias* case previously mentioned, the Federal District Court stated that it was "inclined to agree" with the argument that selection of the ICC rendered the clause unconscionable, but concluded that the issue was moot because Gateway had agreed to arbitrate before the American Arbitration Association (AAA) and sought court appointment of the AAA pursuant to Federal Arbitration Act (9 USC) § 5. The court accordingly granted Gateway's motion to compel arbitration and appointed the AAA in lieu of the ICC. Plaintiffs in that action (who are represented by counsel for appellants before us) contend that costs associated with the AAA process are also excessive, given

the amount of the individual consumer's damages, and their motion for reconsideration of the court's decision has not yet been decided. While the AAA rules and costs are not part of the record before us, the parties agree that there is a minimum, nonrefundable filing fee of $500, and appellants claim each consumer could spend in excess of $1,000 to arbitrate in this forum.

Gateway's agreement to the substitution of the AAA is not limited to the *Filias* plaintiffs. Gateway's brief includes the text of a new arbitration agreement that it claims has been extended to all customers, past, present and future (apparently through publication in a quarterly magazine sent to anyone who has ever purchased a Gateway product). The new arbitration agreement provides for the consumer's choice of the AAA or the ICC as the arbitral body and the designation of any location for the arbitration by agreement of the parties, which "shall not be unreasonably withheld." It also provides telephone numbers at which the AAA and the ICC may be reached for information regarding the "organizations and their procedures."

As noted, however, appellants complain that the AAA fees are also excessive and thus in no way have they accepted defendant's offer (*see*, UCC 2-209); because they make the same claim as to the AAA as they did with respect to the ICC, the issue of unconscionability is not rendered moot, as defendant suggests. We cannot determine on this record whether the AAA process and costs would be so "egregiously oppressive" that they, too, would be unconscionable (*Avildsen v Prystay*, 171 AD2d 13, 14, *appeal dismissed* 79 NY2d 841). Thus, we modify the order on appeal to the extent of finding that portion of the arbitration provision requiring arbitration before the ICC to be unconscionable and remand to Supreme Court so that the parties have the opportunity to seek appropriate substitution of an arbitrator pursuant to the Federal Arbitration Act (9 USC § 1 *et seq.*), which provides for such court designation of an arbitrator upon application of either party, where, for whatever reason, one is not otherwise designated (9 USC § 5).

Appellants make the final argument that the arbitration clause does not apply to the cause of action for false advertising (with respect to the promised round-the-clock service) under various sections of the General Business Law on the ground that there is no mention of arbitration in the technical service contract itself. Although they raise this claim for the first time on this appeal, we find the promise of technical sup-

port to be within the scope of arbitration as it is clearly a "dispute or controversy arising out or relating to [the] Agreement or its interpretation." Put another way, the service contract does not apply to some separate product that could be retained while the computer products—and the accompanying agreement—could be returned.

Accordingly, the order of Supreme Court, New York County (Beatrice Shainswit, J.), entered October 21, 1997, which, to the extent appealed from, granted defendants' motion to dismiss the complaint as to appellants on the ground that there was a valid agreement to arbitrate between the parties, should be modified, on the law and the facts, to the extent of vacating that portion of the arbitration agreement as requires arbitration before the International Chamber of Commerce, with leave to the parties to seek appointment of an arbitrator pursuant to 9 USC § 5 and remanding the matter for that purpose, and otherwise affirmed, without costs.

NARDELLI, MAZZARELLI and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered October 21, 1997, modified, on the law and the facts, to the extent of vacating that portion of the arbitration agreement as requires arbitration before the International Chamber of Commerce, with leave to the parties to seek appointment of an arbitrator pursuant to 9 USC § 5 and remanding the matter for that purpose, and otherwise affirmed, without costs.