*247 OPINION OF THE COURT
Ciparick, J.
In this paternity proceeding, we are called upon to decide whether a putative father can invoke Family Court Act § 516 to bar a mother from seeking additional child support, where the parties entered into a support agreement that was approved by the court without regard for the child’s needs. Under the facts presented here, we conclude that he cannot.
In 1983, petitioner Clara C., then a college student, gave birth to her son, Thomas L. C. In 1986, she commenced a paternity proceeding against her former professor, respondent William L. Although blood tests revealed a 99.9% probability of paternity, the parties entered into a settlement agreement pursuant to Family Court Act § 516. Without admitting paternity, William agreed, among other things, to pay monthly child support of $275 until Thomas’s 21st birthday, and to maintain a life insurance policy as security for those payments in the event of his own death. In exchange, Clara agreed to dismissal of the pending paternity proceeding with prejudice and to forbear bringing any future paternity or support proceedings, provided that William satisfied the terms of the agreement.
After executing the agreement, the parties, along with the Department of Social Services, appeared before Family Court for approval of the agreement pursuant to section 516 (a). Although Clara and William were represented by counsel, no law guardian had been appointed to represent Thomas. The court asked counsel whether the “matter was settled by the at *248 torneys” and whether an order of filiation had been made, to which William’s attorney replied, “This is compromising the entire deal, the paternity and the support. That’s what [section] 516 is.” The court then marked the case “settled” without further inquiry. When counsel asked the court to probe further into whether the parties read the agreement and considered it to be fair and acceptable, the court refused, stating “I assume if your clients [are] in this court and you represent them it is settled.”
Ten years later, Clara commenced the instant proceeding for a declaration of paternity and an order increasing Thomas’s support to meet his current educational needs. On William’s motion, the Hearing Examiner dismissed the proceeding, concluding that it was barred by the terms of the section 516 agreement. Clara objected to the Hearing Examiner’s determination, arguing that the agreement was unenforceable because William failed to comply with its terms. Alternatively, she maintained that section 516 violates equal protection because, unlike marital children, nonmarital children whose mothers have entered into section 516 agreements are precluded from seeking additional child support. Before considering Clara’s objections, Family Court appointed a law guardian to represent Thomas. The law guardian adopted the constitutional argument and added that the agreement was invalid because the court failed to determine whether adequate provision had been made for Thomas.
Family Court denied the objections to the Hearing Examiner’s order and upheld dismissal of the petition. Among other things, the court rejected Clara’s claim that William failed to comply with the agreement, concluding that any noncompliance was immaterial (181 Misc 2d 241, 247). Moreover, although the court recognized that a “more thorough review of the [a]greement’s adequacy might be deemed salutary” (id., at 248), it refused to invalidate the agreement on this basis, noting that any attempt to undo the 12-year-old agreement would undermine the strong policy favoring the finality of settlements. Finally, the court upheld the constitutionality of section 516 and concluded that appellate courts have consistently enforced such agreements. The Appellate Division affirmed “for reasons stated” by Family Court (274 AD2d 583). We now reverse.
Family Court Act § 516 allows a mother and a putative father of a nonmarital child to settle a paternity proceeding by entering into a binding support agreement that waives future support. It provides, in pertinent part:
*249 “(a) An agreement or compromise made by the mother or by some authorized person on behalf of either the mother or child concerning the support of either is binding upon the mother and child only when the court determines that adequate provision has been made and is fully secured and approves said agreement or compromise. * * *
“(c) The complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child” (emphasis added).
The language of the statute is clear: a support agreement will be enforced “only when” a court has reviewed the agreement and determined that adequate support for the child has been made (Family Ct Act § 516 [a]).*
This requirement reflects a longstanding legislative policy of protecting the welfare of children born out of wedlock. Section 516 (L 1962, ch 686) replaced Domestic Relations Law former § 121 (L 1925, ch 255). Prior to the enactment of section 121, settlements for the support of nonmarital children were commonly made by local welfare officials and required no court approval. Concerned that these settlements were inadequate to support the child, the Legislature amended the law to require judicial approval of certain settlements before releasing the father from his obligations (see, Mem of Women’s City Club of New York, Bill Jacket, L 1925, ch 255, at 9-10).
Section 516 (a), like its predecessor, provides that a compromise agreement is not binding on the parties unless a court approves it and determines that adequate provision for the child’s support has been made. The purpose of this requirement is to ensure that the needs of nonmarital children are adequately met and are not contracted away by their mothers, whose interests may not always coincide with those of their children (see, Avildsen v Prystay, 171 AD2d 13, 14-15, appeal dismissed 79 NY2d 841; Sobie, New York Family Court Practice § 7.19, at 380 [10 West’s New York Practice Series 1996]; 1 Vitek, Disputed Paternity Proceedings § 2.05 [4] [a], at 2-88 [5th ed]). Indeed, judicial scrutiny prevents overreaching by the parties and safeguards the interests of children who, like Thomas, *250 may not be represented by a law guardian. While section 516 prescribes no particular inquiry for determining the adequacy of support, courts have generally considered the parties’ financial positions, the child’s support and educational needs throughout childhood and the interests of the State (see generally, Andre v Warren, 248 AD2d 271, 271-272; Matter of Michelle W. v Forrest James P., 218 AD2d 175, 178; Matter of Carmen V. v Bruce R., 115 Misc 2d 377, 379-380). Regardless of the inquiry used, a court must determine the fairness and adequacy of a proposed agreement before approving it (Family Ct Act § 516 [a]). Absent judicial review and approval, the agreement will not be enforced to preclude a later modification of support (id.).
Here, Family Court’s perfunctory approval of the agreement, without any determination as to its adequacy, failed to satisfy the requirements of section 516. Nothing in the record indicates that the court considered the parties’ financial situation or whether the agreed-upon amount of support adequately met Thomas’s needs throughout childhood. To the contrary, when counsel asked the court to inquire whether the parties considered the agreement to be fair, the court refused, stating only that the matter was “settled.” Although Clara voiced no objection to the agreement for over 10 years, her failure to object does not justify enforcement of an agreement that was approved without any determination that adequate provision had been made for the child. Because the court made no determination as to the adequacy of the support, the agreement fails to conform to section 516. Thus, William may not invoke the statute to bar the instant proceeding for a declaration of paternity and an increased support order to meet Thomas’s ongoing educational needs.
Having determined that the agreement here does not comply with the requirements of section 516, we have no occasion to consider the constitutionality of that section. Moreover, we do not pass upon the continuing viability of Bacon v Bacon (46 NY2d 477), decided nearly a quarter-century ago. We are bound by principles of judicial restraint not to decide constitutional questions “unless their disposition is necessary to the appeal” (People v Carcel, 3 NY2d 327, 330; see also, Matter of Cipolla v Golisano, 84 NY2d 450, 455; Peters v New York City Hous. Auth., 307 NY 519, 527-528). Because a compelling non-constitutional ground resolves this appeal, we refrain, at this time, from addressing the constitutional issues raised.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Family Court for *251 further proceedings in accordance with the opinion herein. The certified question should not be answered upon the ground that it is unnecessary.

 Other jurisdictions have similarly required judicial scrutiny and approval of such agreements (see, e.g., Willerton v Bassham, 111 Nev 10, 22, 889 P2d 823, 830-831; Tuer v Niedoliwka, 92 Mich App 694, 700, 285 NW2d 424, 427; Fox v Hohenshelt, 19 Ore App 617, 628-629, 528 P2d 1376, 1381).