OPINION OF THE COURT
 

 Smith, J.
 

 The issue before us, brought by certified questions from the Second Circuit, is whether various actions taken by the State Department of Insurance, including the promulgation and distribution of the advisory communication Circular Letter 4, comply with Insurance Law § 2610 (b). We conclude that they do not.
 

 In the fall of 1992, the Department of Insurance initiated an investigation in the Rochester area to determine whether insurance companies were complying with Insurance Law § 2610 (b), a State statute that regulates “steering” of policyholders by automobile casualty insurers to particular auto-repair shops with which the insurance company has an established business relationship. The statute reads:
 

 “In processing any such claim (other than a claim solely involving window glass), the insurer shall not, unless expressly requested by the insured, recommend or suggest repairs be made to such vehicle in a particular place or shop or by a particular concern.”
 
 [1]
 

 The investigation centered upon whether claimants were receiving unsolicited recommendations of specific repair shops at the time claims were made. The Department concluded that all of the insurance companies it had investigated were violating section 2610 (b).
 

 Plaintiff Allstate was among the insurance companies found to be in violation. The Department determined that Allstate’s Priority Repair Option Program was contrary to section 2610 (b). Under this program, Allstate employees would inquire
 
 *202
 
 whether claimants had a preferred repair shop. In the event that a claimant expressed no preference, the Allstate employee would inquire whether the claimant wanted a recommendation. If the claimant answered in the affirmative, the agent would recommend a shop that was part of Allstate’s program. Additionally, Allstate displayed signs and brochures in its offices advertising the program.
 

 The Department informed Allstate that it planned to impose a $100,000 fine unless Allstate agreed to change its practice. Allstate and the Department reached a settlement (the Settlement Letter) in which Allstate agreed to modify its conduct, but denied violating the law. Specifically, Allstate agreed not to (1) discuss, with certain exceptions, the selection of repair shops unless it was actually requested by the claimant, (2) inform claimants that section 2610 (b) forbade them to recommend a shop unless prompted, (3) knowingly distribute literature referring to any repair facility programs to policyholders once a claim had been reported, unless actually requested to do so by the claimant, and (4) display signs or brochures referring to its Priority Repair Option Program or otherwise advertise any repair facility programs at its offices where claimants might be exposed. Allstate could still promote the program through general mailings, so long as such mailings were not intentionally sent to policyholders who had reported claims.
 

 Shortly thereafter, the Department issued an advisory communication to insurance companies, “Circular Letter No. 4 of 1994,” which articulated the Department’s interpretation of section 2610 (b), as developed in its settlement with Allstate. The Letter, which contained roughly the same terms as the Settlement Letter, stated in pertinent part:
 

 “No insurer should suggest to their policyholders who present claims that the policyholder should request a recommendation or referral, including by distributing copies of § 2610 itself * * * [S]igns mentioning or describing an insurer’s repair program should not be displayed at any drive-in claim facility, sales office or other insurer locations.” (<http://www.courts.state.ny.us/reporter/webdocs/ Circular_Letter.htm >.)
 

 Soon after Circular Letter 4 was distributed, plaintiff GEICO submitted to the Department for review and approval a proposed change to the Automobile Casualty Manual given to its policyholders, which stated:
 

 
 *203
 
 “In consideration of the premium charged for coverage * * * you agree with us that, in the event of a covered loss resulting in damage to your auto, you request that we recommend repair facilities. * * * You agree with us that covered repairs will be completed at a repair shop recommended by us. * * * If you do not have your auto repaired at a repair facility recommended by us, you will be paid the amount of the estimate prepared by us and/or the preferred repairer.”
 

 As an incentive to existing and prospective policyholders to agree to this arrangement, GEICO intended to reduce the cost of collision coverage by 10% and the cost of comprehensive coverage by 5%. The Department rejected this proposal as violating the statutory framework of section 2610.
 

 Allstate and GEICO filed separate suits in the United States District Court for the Southern District of New York, naming as defendant the then Acting Superintendent of Insurance of the State of New York, Gregory Serio. Both plaintiffs sought injunctive relief and judgments declaring that section 2610 (b) violated their free speech rights under the Federal and State Constitutions, and Allstate further argued that Circular Letter 4 was an unconstitutional restriction on commercial speech under federal and state law. Additionally, Allstate sought to void the Settlement Letter, and GEICO requested that the Department’s rejection of its proposal be overturned.
 

 The District Court, in a single opinion, awarded summary judgment to the insurers, issuing a declaratory judgment enjoining the Department from enforcing section 2610 (b) and Circular Letter 4, and annulling the Settlement Letter. The court further applied the United States Supreme Court’s multipart test articulated in
 
 Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of N.Y.
 
 (447 US 557, 566 [1980]) and ruled that the regulated speech was neither unlawful nor misleading, and that section 2610 (b) unconstitutionally restricted plaintiffs’ free speech rights under the First Amendment. The District Court concluded (2000 WL 554221, *22, 2000 US Dist LEXIS 6055, *70 [SD NY, May 5, 2000]), that although, “the State has a substantial interest in regulating the insurance industry and in protecting consumers,” thereby satisfying the first prong of the
 
 Central Hudson
 
 test for restrictions on protected commercial speech, section 2610 (b) did not directly and materially advance the State’s interest in protecting consumers (the second prong of
 
 Central Hudson)
 
 
 *204
 
 because it deprived consumers of access to pertinent information.. The court also concluded that the Department failed to set forth adequate proof that consumers experienced confusion about their rights regarding the selection of repair shops, that the statute was not narrowly drawn (the third prong of
 
 Central Hudson)
 
 because less restrictive means, such as antitrust laws, could be used to govern this type of activity, and that consumers were adequately protected by section 2610 (a).
 

 On appeal, the United States Court of Appeals for the Second Circuit noted that section 2610 (b) had not been authoritatively interpreted by this Court. The Second Circuit further noted that if this Court should conclude that neither Allstate nor GEICO was in violation of section 2610 (b), or that section 2610 (b) violates the New York Constitution, the case could be disposed of on state law grounds, and the federal constitutional issue would be avoided. Accordingly, the court certified the following questions to this Court:
 

 “(1) Is Circular Letter 4 a valid interpretation of New York Insurance Law § 2610 (b)?
 

 “(2) Under § 2610 (b), can the Department of Insurance properly impose a settlement of the sort reached by the Department with Allstate?
 

 “(3) Under § 2610 (b), can the Department of Insurance prohibit the ‘preferred repairer’ clause proposed by GEICO for its Automobile Casualty Manual?
 

 “(4) If any of these Department actions is permitted under Insurance Law § 2610 (b), is that statute an unconstitutional regulation of commercial speech under Article I, Section 8 of the New York Constitution?” (261 F3d 143, 154 [2001].)
 

 We accepted certification (96 NY2d 931 [2001]) and now answer the first three questions in the negative. Our response to the initial questions makes it unnecessary to address the fourth question regarding the constitutionality of section 2610 (b)
 
 (see Matter of Clara C. v William L.,
 
 96 NY2d 244, 250 [2001]).
 

 Turning to the statute, the State Legislature enacted the predecessor to Insurance Law § 2610 (a) in 1973 to “prevent insurers from requiring, as a condition to the payment of losses, that their insureds have collision losses repaired by particular body shops” (Mem of NY Ins Dept, Bill Jacket, L 1973, ch 909). That section provides:
 

 
 *205
 
 “Whenever a motor vehicle collision or comprehensive loss shall have been suffered by an insured, no insurer providing collision or comprehensive coverage therefor shall require that repairs be made to such vehicle in a particular place or shop or by a particular concern.” (Insurance Law § 2610 [a].)
 

 The Legislature enacted the predecessor to section 2610 (b) in 1974 “to discourage the use of ‘referral’ body shops by insurers” and to “prevent any insurer, unless expressly requested by the insured, from recommending or suggesting to any claimant that repairs be made in a particular place or shop or by a particular concern” (Mem of NY Ins Dept, Bill Jacket, L 1974, ch 743).
 

 The literal language of section 2610 (b) restricts when an insurance company can make recommendations or suggestions that repairs be performed at a particular shop. The statute does not regulate speech on subjects other than recommendations or suggestions about particular shops, nor does the statute regulate the content or placement of material promoting an insurance company’s repair program, nor does the statute regulate discussion or distribution of its text.
 

 Here, both Circular Letter 4 and the Settlement Letter exceed the statute’s requirements and are therefore invalid. The legislative intent in enacting section 2610 was to protect the consumer’s right to choose and to combat the practice of coercing or enticing consumers into using repair shops selected by insurers rather than the ones they preferred to use. Notably, before the Department issued Circular Letter 4 in 1994, for nearly 20 years the only related regulatory activity consisted of two circular letters reminding insurers about the terms of the law (see New York State Department of Insurance Circular Letters Nos. 5 [1990], 9 [1992]). Moreover, the Department did not show how Circular Letter 4 advanced the legislative intent of section 2610 (b), nor did the Department evince a factual basis supporting its expansive construction of the regulation as prohibiting (1) the distribution to insureds of brochures or other literature that mention or describe a repair program or a guarantee of repair programs, (2) the posting of signs at insurer locations that mention or describe a repair program, (3) the initiating of communication that might prompt an insured to request a repair shop recommendation or information from the insurer, (4) the discussion of an insured’s repair shop choice, or (5) the mentioning of the mere existence of section 2610 (b) to an insured. Accordingly, Circular Letter 4
 
 *206
 
 is not a valid interpretation of New York Insurance Law § 2610 (b), and because the Settlement Letter mirrors provisions contained in Circular Letter 4, it was improper for the Department to require such an agreement.
 

 With respect to the third certified question addressing GEICO’s proposed preferred repairer promotion in which in exchange for reduced premium payments, insureds agreed that repairs would be completed at a repair shop recommended by GEICO, the Department contends that it was justified in rejecting the proposal under section 2610 (a). The Department further contends that, albeit a closer question, GEICO’s proposal also violates section 2610 (b) because the proposal, in effect, requires an insured to receive a repair shop recommendation when making a claim.
 

 The Department’s rejection of GEICO’s proposed preferred repairer promotion was based on restrictions not supported by section 2610 (b). The promotion does not require that an insurance company request, recommend or suggest a particular repair shop while an insurer has an active claim, but rather requires a prospective claimant to agree to use a preferred repairer for a reduced contract fee. Thus, the Department’s rejection of the proposal on section 2610 (b) grounds is not sustainable.
 

 We underscore that the question of whether the proposal could have been properly rejected by the Department pursuant to section 2610 (a) is not before us. Notwithstanding the present specificity of defendant’s arguments rejecting GEICO’s proposal under both section 2610 (a) and (b), the rationale supporting the initial rejection is unclear. Rather, the Department simply stated that the promotion was “violative of Section 2610.”
 
 [2]
 
 Thus, as a function of the Department’s lack of clarity in its initial rejection of GEICO’s request, and because the certified question directs our review to whether section 2610 (b) prohibits GEICO’s proposed preferred repairer promotion, we do not address whether the Department would have been justified in rejecting the proposal pursuant to section 2610 (a).
 

 Subsequent to the Second Circuit’s certification to this Court, the Department has made key concessions that are in large measure determinative of the issues on appeal before us. With respect to the first certified question, the Department concedes that to the extent Circular Letter 4 recites the restrictions set
 
 *207
 
 forth in section 2610 (b), it is a valid interpretation, but to the extent that it does not, it is not a valid interpretation. In this regard, the Department concedes that the following prohibitions on insurers contained in Circular Letter 4 go beyond the restrictions imposed by section 2610 (b): the prohibition on distributing literature referring to repair programs or insurer guarantees of repairs; the prohibition on distributing copies of the statute or displaying signs mentioning an insurer’s repair program; and the prohibition on discussing a repair choice by the insured after that choice has been made.
 

 With respect to the second certified question, the Department likewise concedes that to the extent the provisions of the settlement between Allstate and the Department mirror section 2610 (b), it is a constitutional interpretation. The Department therefore concedes that the following restrictions in the settlement are invalid as beyond section 2610 (b): the distribution of literature on Allstate’s repair program; the installation of signs describing Allstate’s repair program; and the prohibiting of further discussion of a repair shop once the insured has made a choice.
 

 Accordingly, certified questions 1, 2 and 3 should be answered in the negative and certified question 4 not answered as unnecessary.
 
 [3]
 

 Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions 1, 2 and 3 answered in the negative and certified question 4 not answered;
 

 [1]
 

 . In 1983, the predecessor to section 2610 (b) was amended so as to exempt all claims involving glass repair alone.
 

 [2]
 

 . The District Court concluded that the Department was referring to section 2610 (b), not 2610 (a), in its rejection letter.
 

 [3]
 

 . While it is unnecessary for us to reach the state constitutional law question in this case in view of our answers to questions 1, 2 and 3, we note our view that state constitutional review — which can enlarge but not diminish rights under the United States Constitution — as a rule follows, rather than precedes, federal constitutional review.