OPINION OF THE COURT
Carol Goldstein, J.
The parents of a child, now about one year old, jointly sought an order of custody to the mother, with whom the child is living, and the voluntary surrender and the termination of the father’s parental rights. The father has never seen the child and he claims that he has fulfilled his financial obligation to the child by his prepayment of $150,000 of child support. After an analysis of the relevant statutes and case law, the court finds that the Family Court has no authority to grant termination of parental rights in this type of private litigation and the court therefore denies this relief. On consent, the court grants the mother sole legal and physical custody of the subject child.
Background
On June 26, 2015, petitioner mother Hope B. and respondent father Avery G. jointly filed a petition in New York County Family Court seeking that an order of custody be entered in favor of the mother to their son Paul B., born in 2015. The petition further sought to “voluntarily surrender and terminate the parental rights” of the father. The petition stated that for the “purposes of this proceeding,” Mr. G. is the “biologically and legally established father of the child.”[2] The petition alleged that Paul has resided with his mother in New York State from the time of his birth through the date of the filing of the petition, and that the father resides in Texas.
Before ruling on the unusual application to terminate the father’s parental rights, the court requested that the parents relay to the court by affidavit their personal history, their motivation for seeking this extraordinary relief and a summary of their educational background and employment history. The father submitted an affidavit dated July 30, 2015, and the mother submitted an affidavit dated August 2, 2015. The court also requested that the parties submit a memorandum of law demonstrating that the Family Court has the authority to *427 grant termination of parental rights under the circumstances presented. The attorneys submitted a joint memorandum of law dated July 23, 2015.
The parties, who were never married, met while they were both students at Dartmouth College and began dating in the spring of their junior year. After graduation in June 2013, the mother accepted a job as director of marketing for a company in New York City, while the father accepted a research position in Austin, Texas. The parties maintained a long-distance relationship until September 2014, when the mother advised the father that she was 23 weeks pregnant. At this point, the relationship between the parties went into a downward spiral.
According to the mother, she was unaware of her pregnancy prior to this date and when she told the father, he and his family blamed her “for the entire situation.” The father encouraged the mother to seek a late term abortion or to place the child for adoption. Both of these options were rejected by the mother.
According to the father, upon learning of the late term pregnancy, he suffered from extreme emotional distress, which manifested itself in physical and emotional symptoms. He developed stress related shingles, his weight fluctuated drastically and he “was unable to sleep without anti-depression and anti-anxiety medication.” The father asserted that the mother subjected him to “continued harassment, threats, defamation and intimidation,” and that she intentionally interfered with his business and personal relationships.
The father claimed that after Paul was born, the mother demanded that he surrender and terminate his parental rights. On March 9, 2015, the mother’s attorney sent a letter to the father’s attorney “strongly recommending” that the father terminate his parental rights to Paul. In the letter, the mother’s counsel reminded the father’s counsel that absent termination of parental rights, the matter of child support “will continue for 18 years and can potentially endure multiple motions for modification as [the father’s] income increases and his son’s needs substantially change.”
In Texas, following genetic testing which determined that the father has a 99.9999999% probability of paternity, the parties entered into an agreement entitled “Irrevocable Informal Settlement Agreement.” The agreement, signed on May 27, 2015, provides that the mother is to file a petition to terminate the father’s parental rights in New York and that the father is to deposit $150,000 in a trust account. According to the father, *428 this amount “exceeds on its face the lifetime amount and present value of properly calculated child support.” While the termination proceedings are pending, the mother is to receive a monthly sum of $832.33 ($698.78 basic support and $133.55 health insurance) from the trust account for child support.[3] Upon entry of an order terminating the father’s parental rights, the mother is to receive the balance of the $150,000 held in trust. The agreement provides that the father’s parental rights be irrevocably terminated and that all claims for child support be thereafter waived.[4] The agreement further provides that if a New York court does not grant termination of parental rights, the amount the mother already received is to be credited towards the father’s support obligation and the remainder of the money held in trust is to be returned to the father.
The agreement was submitted to the Texas District Court on May 27, 2015. On December 5, 2015, the Texas court issued an order of parentage declaring Mr. G. to be Paul’s legal father.
With respect to their reasons for seeking termination of the father’s parental rights, the mother asserted that it is in Paul’s best interests because the father and his family expressed a desire not to have any contact with Paul now or in the future. She emphasized that the father has never seen Paul.
The father asserted that his parental rights should be terminated because as a father, he would be “relegated to a marginalized denigrated interference.” According to the father, *429 a surrender and termination of his rights will spare Paul “irrevocable conflict and negative consequences.” It would also eliminate impediments to any future adoption of Paul by a spouse or intimate partner of the mother. The father also believes that he “cannot regain [his] footing unless free from the damaging influence” of the mother.
According to the father, there is a Texas statute that permits the relinquishment of parental rights that is “routinely used.”[5] The parties, however, acknowledge that New York is the proper jurisdiction to entertain this application under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[6]
The parents reported that they are both employed at their first jobs since graduating college. The mother currently earns $85,000 a year, while the father earns $57,000 a year.
Arguments of the Parties
In the memorandum of law, submitted in support of their joint petition to voluntarily surrender and terminate the father’s parental rights, the parties acknowledged that usually a voluntary surrender or termination of parental rights occurs where the child is in foster care or a state agency is a party. Nonetheless, the parties argued that the family court is “equitably empowered” to consider and grant the instant petition.
*430 The parties did not cite any New York case granting surrender or termination of parental rights under circumstances similar to those presented herein. However, they cited two Family Court cases involving private litigation between the parents where that relief of surrender or termination of parental rights was denied and argued that the circumstances in those cases can be distinguished from the circumstances in the instant case. The parties argued that in Matter of Aida G. v Carlos P. (163 Misc 2d 423 [Fam Ct, Queens County 1994]) the relief was denied because, unlike in the instant case where a “lifetime” of support was prepaid, a party in that case was impermissibly attempting to avoid financial responsibility for the child. The parties argued that in Matter of Shawanda R. (17 Misc 3d 437 [Fam Ct, Kings County 2007]), the court denied the relief under a best interests analysis. The parties also cited Matter of Bennett v Jeffreys (40 NY2d 543 [1976]), a case involving a nonparent seeking custody of a child—not the termination of parental rights to the child—in an attempt to argue that the court may consider the best interests of the child in determining the instant application.
Additionally, the parties cited Social Services Law § 384-b as an enabling statute, arguing that subdivision (3) (a) permits a relative with care and custody of a child to file a petition to terminate a parent’s parental rights. The parties, however, ignored the requirements in the statute that the child be “destitute” or “dependent” and that at the conclusion of the proceedings, guardianship and custody of the child be committed to an authorized agency or a relative for the purpose of adoption (see discussion, infra at 432).
Finally, the parties argued that the relief requested is in Paul’s best interests based on the following: Paul will be in the “safe, stable and nurturing home” of the mother during his minority; the father has never seen Paul and does not intend to have any relationship with him in the future; and the parties have already agreed to a final determination of child support, which provides for a prepayment by the father of “lifetime” support for Paul.
Decision
There are no provisions in the Family Court Act, the Domestic Relations Law or the Social Services Law which would permit the voluntary surrender or termination of the parental rights of one parent under the circumstances pre *431 sented in this case. This court emphasizes that the Family Court possesses only those powers which are explicitly conferred on it by statute (Matter of Martin v Martin, 127 AD2d 266 [2d Dept 1987]; see also Matter of Matthew G., 184 AD2d 323 [1st Dept 1992]; Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972]). Moreover, there is no reported New York case which has permitted termination of parental rights under the circumstances presented herein. Accordingly, this court denies the request that the father’s parental rights be terminated.
There are three specific New York statutory provisions for the surrender of a child or the termination of parental rights. Each of these statutory provisions will be analyzed individually to demonstrate that none of them are applicable under the instant circumstances.
Social Services Law § 383-c (1) provides that the parent of a child who is in foster care may file a written instrument known as a “surrender.” Upon acceptance of the surrender by the court, the guardianship of the person and custody of the child is committed to an authorized agency. A child in foster care is defined in subdivision (1) as a child in the care and custody of an authorized agency pursuant to Social Services Law § 384-a (voluntary placement with an authorized agency), Family Court Act article 3 (juvenile delinquency proceedings), Family Court Act article 7 (persons in need of supervision proceedings), or Family Court Act article 10 (abuse and neglect proceedings). Social Services Law § 383-c (1) is clearly inapplicable because Paul is not in foster care, rather he is living with his mother. It is further inapplicable because it is not the intent of the parties that guardianship and custody of Paul be committed to the care of an authorized agency. Rather, the clear intent of the parties is that Paul remain in the loving care of his mother.
Social Services Law § 384 provides that under certain circumstances, the parental rights to a child who is not in foster care may be surrendered. However, the guardianship and custody of the child must still be committed to an authorized agency. Indeed, the statute makes explicitly clear that a surrender under this section shall not “apply to any instrument purporting to commit the guardianship of the person and the custody of a child to any person other than an authorized agency” (Social Services Law § 384 [3]). As stated above, surrender to an authorized agency could not be further from the intent of these parties and thus this statute does not apply.
*432 Social Services Law § 384-b, which provides for the termination of parental rights of a destitute or dependent child is also inapplicable since Paul is neither destitute nor dependent. A “destitute child” is defined in Social Services Law § 371 (3) as a child who does not fit within the definition of a neglected or abused child who nonetheless is in a state of want due to lack of sufficient food, clothing, shelter or medical or surgical care. Social Services Law § 371 (7) defines a “dependent child” as “a child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character.” Paul is not in a state of want. Nor is he in the custody of or wholly or partly maintained by an authorized agency. Paul is in the care of his mother who is providing for all of his needs. Moreover, Social Services Law § 384-b mandates that upon termination of parental rights, guardianship and custody of the child be committed to an authorized agency, foster parent or a relative for the purpose of adoption (subd [3] [a]). The court reiterates that this is not the plan for Paul.[7]
The court also mentions Domestic Relations Law § 117 (1) (a). While not a termination or surrender statute, Domestic Relations Law § 117 (1) (a) provides that following adoption, “the birth parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child.” This section is not relevant to the instant case because there is presently no adoption planned for Paul. However, if, in the future, there were to be a plan for Paul to be adopted by the mother’s husband or intimate partner, the father might accomplish his goal of ending his parental relationship with Paul by consenting to such adoption pursuant to Domestic Relations Law § 115-b.[8]
*433 Having determined that there are no statutory provisions which would permit the voluntary surrender and termination of parental rights under the scenario presented here, the court now turns to the case law. The case law likewise provides no authority for the surrender and termination of the father’s parental rights.
There is only one reported New York case where a court considered an application to surrender parental rights under a similar fact pattern—Shawanda R. (17 Misc 3d 437)—and in that case, the Family Court Judge denied the relief. In Shawanda R., as here, the subject child resided with the mother, not in foster care, and it was the intention of all parties that the child remain in the mother’s care and custody. The father, with the consent of both the mother and the attorney for the child, filed an application for the court to approve a judicial surrender of his parental rights. While paternity had been established, the father never formed a parental relationship with his now 16-year-old daughter and had provided a mere $150 in support during the child’s lifetime. After noting that the Family Court is a court of limited jurisdiction and considering the statutory provisions applicable to surrenders, the Shawanda R. court unequivocally held that the Family Court does not have the authority to approve a surrender of parental rights under these circumstances (id. at 439). The court further rejected the contention that the father’s parental rights could be terminated, rather than surrendered, since the child was not in foster care.
In Aida G. (163 Misc 2d 423), another case cited by the parties, the fact pattern is slightly different. In Aida G., in the midst of a custody proceeding, the birth mother of a baby born out-of-wedlock filed an application to terminate the parental rights of the biological father who was caring for the child so that the mother could surrender the child for adoption. The birth mother’s dual goals were to ensure that the child be raised in a two-parent household and to avoid her financial responsibility for the child. The Aida G. court found that the termination of parental rights statute, Social Services Law § 384-b, “does not provide for a natural mother to petition the court for the rights of the natural father to be terminated” under these circumstances (id. at 428).
In support of the instant application to terminate parental rights, the parties claim that a termination order is in Paul’s best interests. This court emphatically states that a best *434 interests analysis is irrevelant because, as demonstrated above, the Family Court has no authority to permit the father’s parental rights to be surrendered or terminated. However, this court also strongly disputes the parties’ contention that an order of termination would be in Paul’s best interest. The following brief discussion of best interests should not be read to indicate that this court’s denial of the requested relief is based in any way upon a best interests analysis.
While the parties in the instant case emphasized that the father is not attempting to avoid financial responsibility and has prepaid a “lifetime” of child support, it is unlikely that the prepaid support would actually satisfy the father’s future support obligations or Paul’s future needs. Assuming, arguendo, that the prepaid support of $150,000 would be equivalent to 18 years of basic support at the father’s current salary plus health insurance costs, this Ivy League educated parent is just at the start of his career and it is expected that his future earnings will far exceed his current salary of $57,000, thus increasing his support obligations. The mother will be able to seek and be granted an upward modification of the child support when the father’s income increases or the child’s needs increase (see Family Ct Act § 451 [3] [a], [b] [permitting the court to modify a support order upon a substantial change of circumstances or if either three years has elapsed since the order was entered or there has been a change in either party’s gross income by 15% or more]).[9] Additionally, the prepaid support does not take into consideration the mandatory additional items of support, such as child care expenses, which must be ordered or the discretionary expenses, including private school and college tuition, which may be ordered (see Family Ct Act § 413 [1] [c] [4], [7]). It also fails to take into consideration that New York law requires a non-custodial parent to pay child support until the child turns 21 years old (see Family Ct Act § 413 [1] [b] [2]).
Quite aside from the matter of support, it is far from clear that an order of termination would be in Paul’s best interests. The parents are two young people, right out of college and just starting to make their way in the world. The pregnancy came unexpectedly and was clearly a shock to the father and may *435 have been a shock to the mother as well. Undoubtedly, this was not the way the father envisioned starting a family and he faced what he considered harassment from the mother and claimed that he suffered emotional distress so severe that it manifested itself in physical symptoms. The mother also put pressure on him to terminate his rights when he was unwilling or unable to embrace fatherhood.
Once the father matures, he may, if given the opportunity, wish to form a relationship with his son, whom he will be required to support. The court is also keenly aware that there is no other person who has come forward to adopt Paul and become his legal parent. Paul would thus be left with only one parent and would be orphaned if the mother should pass away. In the future, if the mother’s husband or intimate partner wishes to become Paul’s legal parent by means of adoption, the situation would be vastly different. Right now, the court has not been made aware of any such person on the horizon.
The court grants the parties joint request that the mother be granted a final order of sole legal and physical custody of Paul. The mother has been caring for Paul since his birth and it is not disputed that she is providing appropriate care for him. The father has, thus far, absented himself completely from Paul’s life.
The court makes this custody order having searched the statewide registry of orders of protection, the sex offender registry and the Family Court’s child protective records and not having found any results regarding this family.

. When this court became aware of the fact that an order of paternity had not actually been entered, this court directed that such an order be entered prior to the court considering the instant petition. An order of parentage was entered in District Court, 419th Judicial District, Travis County, Texas on December 5, 2015, declaring Avery G. to be Paul’s father.

. The court is not sure how the father arrived at his conclusion that $150,000 exceeds a lifetime of child support at the father’s current earnings. The current support obligation of $832.33 monthly from birth through Paul’s eighteenth birthday would equal $179,783.28.

. According to the father, New York courts call the type of agreement that the parties signed an “offer and compromise.” There is no comparable agreement that is legal in New York. Possibly, the father is referring to former Family Court Act § 516, entitled “Agreement or compromise,” which was repealed in 2009. That former provision permitted the mother of a child born out of wedlock to reach an agreement with another person (not adjudicated the father) for support of the child so long as the court “determines that adequate provision has been made and is fully secured and approves said agreement or compromise” (former Family Ct Act § 516 [a]). Performance of this compromise would bar other remedies of the mother or child for support and education of the child. Former section 516 was subject to much criticism prior to its repeal because it treated children born out of wedlock differently from children of a marriage and because a mother who was party to this agreement was precluded from seeking support above the level in the agreement irrespective of the needs of the child or the income of the parents (see Matter of Clara C. v William L., 96 NY2d 244, 251-258 [2001, Levine, J., concurring]).

. This court acknowledges that there is a Texas statute which permits a parent to file a suit for termination of his or her parent/child relationship and an order terminating that parent’s relationship may be made if it is in the best interests of the child (see Tex Fam Code § 161.005 [a]). However, contrary to the father’s statement that the statute is “routinely used,” this statute was described by the Texas Court of Appeals as “rarely-used” (In re T.S.S., 61 SW3d 481, 483-484 [2001], reh overruled Oct. 24, 2001, review denied Feb. 14, 2002).

. Under the UCCJEA, New York is the state which has jurisdiction over the instant custody and termination petition. The UCCJEA applies to custody proceedings, which include proceedings to terminate parental rights (Domestic Relations Law § 75-a [4]). A court has jurisdiction to make an initial custody determination if it is the child’s home state (Domestic Relations Law § 76 [1] [a]). “Home state” is defined as “the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding,” and in the case of a child less than six months, “the state in which the child lived from birth with any of the persons mentioned” (Domestic Relations Law § 75-a [7]).
Paul has lived in New York State with his mother from birth until the filing of the instant petition on June 26, 2015, when he was five months old. Thus New York is Paul’s home state and New York has jurisdiction over the matter before the court.

. While the parties correctly noted that Social Services Law § 384-b (3) (b) includes in its list of persons permitted to file a petition to terminate parental rights “a relative with care and custody of the child,” that does not make the statute applicable here. A relative does not include a parent. Moreover, as stated above, this statute only applies to destitute and dependent children and upon termination, guardianship and custody of the child must be committed to an authorized agency for the purpose of adoption.

. A birth parent’s rights and responsibilities with respect to a child are not terminated by the adoption by that parent’s spouse or intimate partner (see Domestic Relations Law § 117 [1] [d]; Matter of Jacob, 86 NY2d 651, 662-669 [1995]). Thus the mother’s parental rights would remain intact after such an adoption.

. Even where parents agree to an order of support in lieu of the Child Support Standards Act pursuant to Family Court Act § 413 (1) (h), the Family Court may nonetheless order an increase in child support if there is a demonstration of a change in circumstances warranting an upward modification (see Matter of Brescia v Fitts, 56 NY2d 132, 141 [1982]).